IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANDREWS PROPERTIES OF THE )
CAROLINAS, LLC, et al., )
 )
 )
 Plaintiffs, )
 ) 1:25-CV-00236
 v. )
 )
CITY OF BURLINGTON and CITY OF )
BURLINGTON BOARD OF )
ADJUSTMENT, )
 )
 Defendants. )

## MEMORANDUM OPINION AND ORDER

Lindsey A. Freeman, United States District Judge.

It is the "settled rule" that 42 U.S.C. § 1983 can provide litigants with a cause of action to bring federal claims against state officials in federal court without first exhausting alternative state remedies. *Knick v. Township of Scott*, 588 U.S. 180, 185 (2019); *see also Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) (holding that litigants do not need to exhaust state administrative remedies before filing a federal lawsuit against state officials under § 1983). This case asks what happens when a litigant elects to forego that right and instead seek redress through state law proceedings for many years before progressing to federal court. Here, the answer is simple. Because Plaintiffs Andrews Properties of the Carolinas, Andrews Properties of the Triad, LLC, and Andrews Properties and Rentals, LLC (collectively, "Andrews") failed to invoke the jurisdiction of the federal courts until after the

relevant statutes of limitations expired as to most of their causes of action, they will be dismissed.

This matter is before the Court after Defendants City of Burlington (the "City") and the City of Burlington Board of Adjustments (the "Board" or "Board of Adjustments") moved to dismiss in part Andrews' initial complaint (the "Complaint") and opposed Andrews' subsequent motion for leave to file an amended complaint (the "Amended Complaint"). *See* Dkt. 8, 21. Having reviewed the parties' briefing on the matter, Dkts. 8, 9, 19, 21, 23, the Court GRANTS Andrews' motion for leave to file the Amended Complaint in part and DENIES that motion in part. It also DENIES Defendants' motion to dismiss as moot.

**FACTS & PROCEDURAL HISTORY**

Since at least 2017, Andrews has owned and operated boarding houses in Burlington, North Carolina. *See* Dkt. 19, Ex. 1 ("Amended Complaint") ¶ 12. Most relevant here, it owns two boarding houses, 614 Maple and 504 Webb, which it purchased in 2017 and 2018, respectively. *Id.* ¶¶ 62, 105. As Andrews explains, "[b]oarding houses are properties in which tenants rent a bedroom while sharing common areas such as restrooms, kitchens, and living spaces with other tenants." *Id.* ¶ 13. It contends that its boarding houses "provide a solution to the homelessness epidemic and create a place for low-income Burlington citizens to live" by offering cheaper alternatives to other multifamily housing options. *Id.* ¶ 24.

Since 2004, the City has regulated boarding houses in some manner. *See id.* ¶ 26. For instance, in 2004 the City passed ordinances banning boarding houses in

2

districts in the City zoned as "residential" and imposed a restriction limiting boarding houses to renting out only five rooms at a time. *Id.* In 2008, the City further banned boarding houses from districts zoned as "multifamily." *Id.*

In 2019, the City adopted the zoning ordinance at issue in this case, the Unified Development Ordinance ("UDO"). *Id.* ¶ 29. While the UDO recognizes boarding houses as a permitted land use, it limits them to renting a maximum of five rooms at a time, restricts them to districts zoned as "Office Industrial" and "Neighborhood Business," and prohibits their operation unless the owner seeks a "special use permit." *Id.* ¶¶ 33-36. The UDO expressly conditions granting of a special use permit on the Board's finding that the proposed boarding house "complies with all required standards, conditions, and specifications" in the UDO, including the requirement that a boarding house not rent more than five rooms at a time. *Id.* ¶¶ 37-38. The Amended Complaint alleges the UDO does not restrict other multifamily housing options in the same manner that it limits boarding houses. *See id.* ¶¶ 40-47.

Soon after adoption of the UDO, Andrews alleges that the City began enforcing its restrictions against Andrews' various properties, including 504 Webb and 614 Maple. Amended Complaint ¶¶ 68, 112. Andrews alleges that 504 Webb, which has operated as a boarding house since 1998, has continually rented more than five rooms thanks to its status as an existing nonconformity pre-dating the City's adoption of restrictions on boarding houses beginning in 2004. *See id.* ¶¶ 58-66. Andrews also alleges that 614 Maple continually rented more than five rooms on the property since 2017 despite the five-room limitations contained in the pre-UDO zoning ordinances.

3

*See id.* ¶¶ 105-06.  On December 15, 2020 (for 504 Webb) and October 1, 2021 (for 614 Maple) the City issued Andrews violation notices stating that, *inter alia*, 504 Webb and 614 Maple had violated the UDO by renting out more than five rooms at a time. *Id.* ¶¶ 68-69, 121-22; *see also id.*, Exs. 5-6, 10.  According to the violation notices, Andrews could appeal the violations to the Board of Adjustment within thirty days of the citation or else Andrews would be fined $100 per day as to each property until the nonconformities were corrected.  *See id.*, Exs. 5, 10.

Andrews timely appealed the notices of violation to the Board, which the Board heard on May 11, 2021 (for 504 Webb) and February 22, 2022 (for 614 Maple).  *Id.* ¶¶ 73, 127-28, 167.  Andrews alleges only that it sought to establish that 504 Webb and 614 Maple had continuous nonconformities that permitted them to rent out more than five rooms despite the UDO's limitations.  *See id.* ¶¶ 75, 129.  During the hearing for 504 Webb, Andrews alleges that it presented extensive documentary evidence and numerous witnesses that 504 Webb had operated as a nonconforming boarding house since 1998.  *See id.* ¶¶ 75-81.  Andrews further alleges that it introduced evidence during the hearing for 614 Maple indicating that it had a zoning certificate permitting the nonconforming use.  *See id.* ¶ 129.

Both appeals to the Board were unsuccessful.  The Board ruled that 504 Webb must discontinue renting more than five rooms and that 614 Maple could not operate as a boarding house at all.  *See id.* ¶¶ 84, 133.  Andrews alleges that the Board ignored evidence presented by its attorneys, discredited 614 Maple's zoning certificate as forged without an expert testifying to that effect, and deliberated for only a short time

during both hearings. *See id.* ¶¶ 82-83, 130-34. According to the Amended Complaint, the Board's decisions were issued on the same day as the hearings, May 11, 2021, and February 22, 2022, for 504 Webb and 614 Maple, respectively. *See id.* ¶¶ 74, 83, 128, 133.

Dissatisfied with the Board's decisions, Andrews alleges that it "filed for writ of certiorari" with the Alamance County Superior Court on July 18, 2022 (for 504 Webb) and an unspecified date (for 614 Maple). *Id.* ¶¶ 95, 139. Those writs were apparently issued by the court on July 26, 2022, and April 13, 2022, respectively. *Id.* ¶¶ 96, 139. Nowhere does the Amended Complaint state that Andrews pursued those writs before the Alamance County Superior Court or whether further proceedings before that court occurred.

According to Andrews, the City's targeting did not stop there. Andrews also alleges that between 2020 and 2022, the City's police and fire departments refused to respond to various emergencies on Andrews' properties, allegedly constituting "disparate treatment" towards Andrews. *Id.* ¶¶ 186-200. The City also allegedly issued a series of violation notices to Andrews' boarding houses between 2021 and 2022 for various infractions. *Id.* ¶¶ 173-85. The Amended Complaint further alleges that two would-be renters declined to rent rooms at 614 Maple in the "summer of 2022" and "September 2022," respectively, at the City's behest. *Id.* ¶¶ 140, 142. And in June 2022, the City emailed Andrews to tell it that it would condemn 504 Webb unless Andrews demonstrated to the City that there were no "life safety violations" on the property. *Id.* ¶ 88. Instead of complying, Andrews contended that the

5

violations had occurred over a year prior and were thus outdated. *Id.* ¶¶ 90. The City condemned 504 Webb on July 6, 2022, with the stated reason that Andrews illegally operated 504 Webb as a boarding house. *Id.* ¶¶ 92-93. But despite condemning the property, the City issued 504 Webb another violation notice for operating as a boarding house in violation of the UDO on July 26, 2022. *Id.* ¶ 97.

Separate and apart from the City's enforcement of the UDO, Andrews also complains that the City was dilatory in its response to two public records requests that Andrews filed in state court on May 21, 2021, and October 1, 2022. *See id.* ¶¶ 201-05. Nowhere does the Amended Complain explain why the public records requests relate to the present dispute concerning the UDO and its enforcement, beyond showing general alleged animus towards Andrews. The Amended Complaint does indicate that Andrews was seeking information from City officials regarding any possible communications they may have had regarding 504 Webb. *See id.* ¶ 202. Andrews also attaches to the Amended Complaint a March 2022 state-court complaint that it filed to compel the City's compliance with its first public records request, which appears to show that Andrews was seeking information regarding 504 Webb and 614 Maple. *See id.*, Ex. 19.[1]

---

[1] The Court notes that the Amended Complaint alleges that Andrews filed the state-court complaint after "Defendants failed to respond" to Andrews' email on January 10, 2023, requesting documents pursuant to its first and second public records requests, Amended Complaint ¶¶ 203-04, but the date on the state-court complaint is March 7, 2022, *id.*, Ex. 19. The Court does not understand how the state-court complaint could support the narrative that Andrews alleges. Given that the allegations concerning Andrews' public records requests bear only dubious relevance to this dispute and that the allegations do not appear to be entirely truthful, the Court will strike the allegations contained in Paragraphs 201 to 205 of the Amended

Andrews filed its Complaint with this Court on March 25, 2025, alleging that the UDO effectuated an unconstitutional taking of its property rights, violated its substantive due process rights, and denied it equal protection under the law. *See* Amended Complaint ¶¶ 188-211, 219-32, 243-57. Andrews also alleges that the City singled out its properties from other boarding houses for uniquely vigorous enforcement, allegedly out of animus for Andrews. *See id.* ¶¶ 173-200, 211-14, 216, 239, 241-44. It further alleges the Board violated its procedural due process rights during its appeals of the violation notices. *See id.* ¶¶ 212-18, 233-42. The Defendants moved to dismiss the Complaint, contending primarily that most of Andrews' claims were time-barred by the relevant statutes of limitations. *See* Dkt. 9 at 10-17. Instead of filing an opposition to Defendants' motion to dismiss, Andrews moved this Court for leave to file the Amended Complaint. *See* Dkt. 19. The parties briefed the merits of the proposed amendment. *See* Dkts. 9, 19, 21, 23. Andrews' motion is thus ripe for this Court's consideration.

## STANDARD OF REVIEW

After a plaintiff's 21-day deadline to amend its complaint as a matter of course has passed, it may seek leave of court to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(1)-(2). While a court should "freely give leave" to amend a complaint "when justice so requires," *id.* 15(a)(2), the Fourth Circuit has recognized that leave may be denied where the amendment (1) would prejudice an opposing party, (2) was sought

---

Complaint. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 200 (4th Cir. 2022) (misleading statements are "not exactly a neon sign of good-faith lawyering").

in bad faith, or (3) would be futile, *see United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022).  Where, as here, the nonmovant contends the amendment would be futile, the court may deny the amendment "if the proposed change … advances a claim or defense that is legally insufficient on its face." *Brown v. First Advantage Background Servs. Corp.*, 700 F. Supp. 3d 380, 382 (M.D.N.C. 2023) (quoting *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir. 1994)).  Here, that determination requires an analysis into whether the proposed Amended Complaint would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See id.*

"To survive a motion to dismiss" for failure to state a claim, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A court must accept as true all well-pleaded allegations.  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013).  And it considers "documents attached or incorporated into the complaint," such as the exhibits Andrews has attached here or the provisions of the UDO incorporated into the Amended Complaint by reference.  *See Riddick v. Barber*, 109 F.4th 639, 645 (4th Cir. 2024) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011)).

"Dismissal is proper if the well-pleaded facts of the complaint, taken in the light most favorable to the plaintiff and excluding 'unwarranted inferences, unreasonable conclusions, or arguments,' fail to state a plausible claim for relief." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023)

8

("*Epcon I*") (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)). A court may dismiss a complaint under Rule 12(b)(6) based on an affirmative defense, "such as the statute of limitations in this case, where the relevant facts clearly appear on the face of the complaint." *Id.* (internal quotations omitted).

Defendants oppose Andrews' motion for leave to file the Amended Complaint as futile. *See generally* Dkt. 21. They contend that the Amended Complaint fails to address the grounds for dismissal identified in their motion to dismiss the Complaint. *See* Dkt. 21 at 5-7; *see also* Dkt. 9 at 10-17. Specifically, Defendants assert that most of Andrews' as-applied federal takings, substantive due process, equal protection, and procedural due process causes of action are barred by § 1983's statute of limitations. Dkt. 9 at 10-14. They further assert that Andrews' constitutional causes of action arising under the North Carolina constitution are time-barred. *Id.* at 14-17. For the reasons stated below, the Court largely agrees with Defendants.

## ANALYSIS

## I. Almost All of Andrews' As-Applied Federal Claims are Time-Barred.[2]

Andrews' as-applied federal claims are subject to a three-year statute of limitations. Because § 1983 does not contain a statute of limitations, "courts borrow the statute of limitations from the most analogous state-law cause of action." *Owens*

---

[2] Defendants do not oppose Andrews' motion for leave to amend to the extent that it expressly alleges facial takings, equal protection, substantive due process, and procedural due process challenges to the UDO's restrictions. Dkt. 21 at 2. This Memorandum Opinion and Order does not address these facial challenges, and Andrews' motion is granted to the extent it seeks leave to expressly allege them.

9

*v. Balt. City State's Att'y's Off.*, 767 F.3d 379, 388 (4th Cir. 2014). The Fourth Circuit has already held that the relevant statute of limitations for purposes of Andrews' takings and substantive due process causes of action is North Carolina's three-year statute of limitations for personal-injury actions. *See Epcon I*, 62 F.4th at 886; *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1161-62 (4th Cir. 1991); *see also* N.C. Gen. Stat. § 1-52(5). The three-year statute of limitations applies to Andrews' equal protection and procedural due process claims, as well. *See Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth.*, 807 F.3d 62, 66-67 (4th Cir. 2014) ("The statute of limitations for all § 1983 claims is borrowed from the applicable state's statute of limitations for personal injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury.").

The parties do not dispute that the three-year limitations period applies to the federal causes of action. *See* Dkt. 9 at 12; Dkt. 21 at 7; Dkt. 23 at 3. The parties instead disagree about when the three-year clock began to tick. That question requires the Court to assess when Andrews' federal constitutional causes of action accrued, which is a "question of federal law." *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). As the Fourth Circuit explained in *Owens*, the "standard rule" for accrual dictates that "a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury." 767 F.3d at 389. Put another way, a claim usually accrues at the point when "the plaintiff can file suit and obtain relief." *Epcon I*, 62

10

F.4th at 886 (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

Discerning the accrual dates for Andrews' causes of action is an admittedly complex task because Andrews is unclear in its Amended Complaint regarding the nature of its claims. At times, the Amended Complaint characterizes Andrews' lawsuit as targeting the allegedly arbitrary restrictions the UDO imposes on Andrews' various properties. *See, e.g.*, Amended Complaint ¶¶ 38-57, 209-10. Elsewhere it appears to complain that these restrictions, whether constitutional or not, have been enforced against Andrews in an unconstitutional manner. *See, e.g.*, *id.* ¶¶ 58-143, 211-16. Andrews' briefing also provides little guidance to clarify the nature of its claims, but "taken in the light most favorable to the plaintiff," *Epcon I*, 62 F.4th at 885, it appears that it intended to bring claims targeting *both* the burdens in the UDO and their enforcement against Andrews' properties, *see* Dkt. 23 at 1, 4-6.

The Court pauses to review the difference between claims and causes of action, as it is critical to resolving Andrews' motion for leave to amend. Andrews' *causes of action* (as informed by the claims underlying them) dictate how Andrews' claims interact with the relevant three-year statute of limitations. *Cf. St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023) (delineating between claims and causes of action); *see also Smith v. Travelpiece*, 31 F.4th 878, 883 (4th Cir. 2022) (under the standard rule, accrual occurs when "the plaintiff has a complete and present *cause of action*" (internal quotations omitted)). While a "claim," may support a cause of action (even multiple causes of action), it is merely "the set of facts that produce an

11

assertable right in court and create a remedy." *St. Augustine*, 78 F.4th at 352. "A theory of relief," or cause of action, is by contrast "the vehicle for pursuing the claim," and "[t]he specific theory dictates what the plaintiff needs to prove to prevail on a claim and what relief may be available." *Id.*

Here, Andrews asserts various causes of action, but those causes of action are only supported by three underlying categories of claims. Andrews' causes of action essentially fall into three buckets, each with a unique set of facts (or claims) that support them: (1) the restrictions in the UDO unconstitutionally burden Andrews' rights (the "Restriction Causes of Action"); (2) the City's enforcement of the UDO against Andrews arbitrarily and discriminatorily singled it out among similarly situated boarding houses (the "Enforcement Causes of Action"); and (3) the Board provided it constitutionally deficient process during its hearings on 504 Webb and 614 Maple's violation notices (the "Process Causes of Action").

Falling within the first "bucket" is the "Restriction Causes of Action." They are the equal protection causes of action contained in Counts 1 and 4, the substantive due process causes of action contained in Counts 2 and 5, and the regulatory takings causes of action contained in Counts 7 and 8. These causes of action tie their theory of harm to the restrictions contained in the UDO, which allegedly unduly burden Andrews' constitutional rights. The second bucket, the "Enforcement Causes of Action," is *also* comprised of the equal protection causes of action contained in Counts 1 and 4. In addition to the unduly burdensome allegations, Andrews' Amended Complaint and supporting briefing (although inartful) reveals that those causes of

action *also* bring a claim targeting the City's alleged "disparate treatment" of Andrews through *enforcement* of the UDO against various properties owned by Andrews through its subsidiary entities, Andrews Properties of the Carolinas, LLC and Andrews Properties of the Triad, LLC.  Amended Complaint ¶¶ 196-200, 214. Lastly, the final bucket—the "Procedure Causes of Action"—contains Counts 3 and 6, which take aim at the alleged constitutional violations that occurred during the Board's violation notice hearings.

Take a hypothetical example to illustrate why these three cause-of-action "buckets" are important.  An ordinance requires that all men wear pink on Wednesdays.  A man brings a lawsuit claiming that a locality's enforcement of the ordinance's line-drawing against him was discriminatory because women are not subject to the same restriction.  In that case, even though the plaintiff claims the *enforcement* is discriminatory, the underlying theory of harm (*i.e.*, cause of action) dictates that the plaintiff's injury is the *line-drawing* in the statute.  That is the case because the plaintiff complains of the differentiation between men (who must wear pink on Wednesdays) and women (who do not need to wear pink on Wednesdays). The same would be true if the man reframed his cause of action as the alleged substantive due process right to wear red on Wednesdays.  The injury is still the requirement that he wear pink, which allegedly impinges his right to instead wear red, not enforcement of the pink-on-Wednesdays mandate.  The *claim* is the same under either action because it takes issue with the restrictions in the ordinance, although two legal theories, or causes of action, support that claim.

13

If, on the other hand, a locality passed the same ordinance but then enforced it only against a single man, then he might incur an injury of a different sort. In that scenario, the plaintiff does not complain of the line-drawing itself, but that the line-drawing has been arbitrarily wielded against him *specifically* instead of all men *equally*. So, the plaintiff's injury is not the differentiation between men and women, but the locality's targeted enforcement of the otherwise facially-neutral statute against only a single regulated individual. Because that injury stems from *enforcemen*t of the statute, the underlying claim is different, the causes of action that provide redress for that injury may be different, and, accordingly, those causes of action might accrue on different dates from causes of action premised on the line-drawing in the ordinance.

Finally, say the man sought to invalidate the pink-on-Wednesday ordinance before the locality's administrative body. During the hearing, he is allegedly denied all opportunities to present evidence in support of his case, even though state law provides him with that right. If the man were to sue in federal court to redress that harm—the denial of process—he would have yet another unique cause of action, even though his claims still center on the same pink-on-Wednesday ordinance. That is the case because now his injury derives from *denial of process* during adjudication of the pink-on-Wednesday mandate, not the mandate's restrictions or the locality's enforcement of them. Again, accrual might occur at a different point in time because the legal injury underlying the plaintiff's cause of action is different.

14

The Court addresses each cause-of-action bucket separately, as the accrual analysis is different for each. The as-applied Restriction Causes of Action in Counts 1, 2, 4, 5, 7, and 8 are time-barred as they accrued on November 1, 2019, and Andrews fails to allege a continuing violation as to those causes of action. The Enforcement Causes of Action are mostly time-barred, except for alleged discriminatory enforcement or disparate treatment occurring after March 25, 2022. Lastly, Andrews' Procedure Causes of Action require yet another unique analysis, but they accrued when the Board ruled against Andrews on May 11, 2021, and February 22, 2022, so they are also time-barred.

## A. Andrews' Restriction Causes of Action are Time-Barred.

### 1. The Restriction Causes of Action Accrued on November 1, 2019.

Although Andrews pursues three separate causes of action as to 504 Webb and 614 Maple, respectively, Counts 1, 2, 4, 5, 7, and 8 (here, the "Restriction Causes of Action") all essentially allege that the City's November 1, 2019 promulgation of the UDO violated Andrews' constitutional rights by prohibiting 504 Webb and 614 Maple from renting out more than five rooms at a time.[3] All six causes of action accrued

---

[3] Counts 1 and 4 contend that Andrews was denied equal protection because the UDO allegedly singles out boarding houses without placing similar restrictions on other multifamily dwellings. Counts 2 and 5 assert the UDO violates Andrews' alleged substantive due process right to operate a boarding house. And Counts 7 and 8 claim that the UDO effectuated a taking of Andrews' property rights when it prohibited 614 Maple and 504 Webb from renting out all available rooms.

15

when the UDO became law on November 1, 2019.[4] Because Andrews filed its lawsuit on March 25, 2025, more than three years after Andrews "kn[ew] or ha[d] reason to know of [its] injury," *Owen*, 767 F.3d at 389, those causes of action are time-barred.

Relevant Fourth Circuit precedent explains that causes of action targeting allegedly unconstitutional restrictions in zoning ordinances accrue when the right at issue has been burdened. In *National Advertising*, the Fourth Circuit considered when a regulatory taking claim accrued after a billboard company sued in 1989 to challenge a 1983 ordinance severely restricting billboards within the city limits of Raleigh. *See* 947 F.2d at 1160-61. The plaintiff argued that it had not been injured by the ordinance (and its claim accordingly did not begin to accrue) until *after* the January 1989 expiration of the five-and-a-half-year amortization period for removal of nonconforming signs when Raleigh enforced the ordinance against it. *Id.* at 1161. Raleigh countered that the plaintiff had suffered cognizable injury to its property rights when the ordinance went into effect in 1983, causing the statute of limitations to expire in 1986. *Id.* The Fourth Circuit agreed with Raleigh. *See id.* at 1163. The court reasoned that the point at which Raleigh's ordinance "*[i]nterfer[ed] with the primary uses of [the plaintiff's] property* is the touchstone of the analysis," rather than the point when Raleigh enforced the ordinance against the plaintiff following

---

[4] The Amended Complaint does not specify the exact date that the UDO went into effect, only stating that it became law "[i]n 2019." *See* Amended Complaint ¶ 29. Although it does not alter the Court's analysis, the Court refers to the exact date specified in the UDO, which Andrews has incorporated into its Amended Complaint by reference. *See* City of Burlington Unified Dev. Code § 1.2 ("This Ordinance shall be in full force and effect on November 1, 2019 ….").

expiration of the amortization period.  *Id.* at 1163 (internal quotations omitted and emphasis added).

The Fourth Circuit in *Epcon I* was once again asked to determine when a cause of action asserting injury from a local zoning ordinance accrued.  *See* 62 F.4th at 884. There, the plaintiff alleged that Chapel Hill allegedly unconstitutionally conditioned the plaintiff's right to develop its land on paying fees to support the town's affordable housing development projects.  *Id.*  Although the plaintiff purchased the land subject to the fee condition in 2015, it paid the fees in installments until 2019 when it then sued claiming the fees violated the unconstitutional conditions doctrine of the Fifth Amendment and its substantive due process rights under the Fourteenth Amendment.  *Id.*  Mirroring the plaintiff in *National Advertising*, the plaintiff in *Epcon I* asserted that it was not injured—and its causes of action did not accrue— until it had paid the first installment of fees in 2017.  *Id.* at 886.

Again, the Fourth Circuit sided with the municipality, affirming dismissal of the complaint.  *Id.* at 888.  The court rejected the plaintiff's differentiation between an unconstitutional condition and the regulatory taking in *National Advertising*, reasoning that "[t]he distinction" does nothing other than to prove "that the government need not physically appropriate property to enact a taking."  *Id.*  The court accordingly affirmed that injury occurs, and a cause of action accrues, when the "government conditions the grant of a land-use permit on the surrender of a landowner's right to just compensation," *not* when the landowner acts subject to the condition.  *Id.*  For that reason, the plaintiff's causes of action accrued in 2015 when

17

it purchased the land subject to the fee condition, and the statute of limitations ran up in 2018 before the plaintiff filed suit. *Id.* at 887-88.

*National Advertising* and *Epcon I* affirm that a regulatory taking (or similar) cause of action targeting a land-use restriction in a local ordinance typically accrues once the property right at issue has been *burdened* by the government. That is the moment when the property owner has suffered a cognizable injury to its property rights and may "file suit and obtain relief." *See Epcon I*, 62 F.4th at 886 (quotation omitted). As *National Advertising* and *Epcon I* indicate, that point will usually (but not always) be, when either: (1) a landowner purchases property subject to an existing, allegedly burdensome land-use restriction, *see Epcon I*, 62 F.4th at 889; or (2) when a landowner's previously-purchased property becomes burdened by a newly-promulgated land-use restriction, *see Nat'l Advert.*, 947 F.2d at 1164-65.

Applying these principles, Andrews' regulatory taking causes of action concerning 504 Webb and 614 Maple accrued on November 1, 2019, when the UDO went into effect. It was at that point that Andrews should have known that the UDO "[i]nterfer[ed] with the primary uses" of 504 Webb and 614 Maple (*i.e.*, operating them as boarding houses with more than five rooms). *See Nat'l Advert.*, 947 F.2d at 1163, 1165; *see also Knick*, 588 U.S. at 202 ("[T]he violation is complete at the time of the taking …."). Regardless, the Amended Complaint expressly alleges that Andrews received *actual* notice from the City notifying it that 504 Webb and 614 Maple violated the UDO's restrictions on boarding houses as early as December 15, 2020, and October 1, 2021, respectively. Amended Complaint ¶¶ 68-70, 121-22. Both dates

18

would still place Andrews' as-applied takings claims well outside of the limitations period.

The same analysis dictates that Andrews' remaining Restriction Causes of Action (for allegedly violating its substantive-due-process and equal-protection rights) accrued on November 1, 2019, even if they are not framed as takings. In *Epcon I*, the Fourth Circuit affirmed dismissal of the plaintiff's substantive due process cause of action targeting Chapel Hill's permitting condition *together* with the takings cause of action. *See* 62 F.4th at 887-88. The court reasoned that the "legal distinctions" between the two causes of action did "not bear on the accrual analysis" because "[t]he underlying injury … is the same under either theory." *Id.* at 886 n.2.[5] Put another way, the claim (*i.e.*, the set of facts supporting a legal injury) was the same, even if the causes of action (*i.e.*, the legal theories) to redress that injury differed.

As explained above, Andrews' "underlying injury … is the same under" any of the Restriction Causes of Action. *See id.* While certainly Andrews' theories as to *how* its rights were violated by the UDO differs with respect to each separate cause of action, they all "stem from the same § 1983 injury" (the UDO's restrictions on boarding houses), so "their legal distinctions do not bear on the accrual analysis." *Id.* Regardless of the theory of harm that Andrews pursues, Andrews complains that it

---

[5] *Epcon I* followed the Fourth Circuit's prior dismissal of an equal protection claim and a takings claim targeting an allegedly unconstitutional land use restriction under a joint accrual analysis. *See Halle Dev., Inc. v. Anne Arundel County*, 121 F. App'x 504, 506-07 (4th Cir. 2005); *see also Epcon I*, 62 F.4th at 886 n.2 (citing *Halle* with approval).

was injured when the UDO allegedly burdened its constitutional rights by placing certain restrictions on the operation of boarding houses.  Thus, under all the Restriction Causes of Action, the fact remains that as of November 1, 2019, Andrews "ha[d] reason to know" how the UDO applied to 614 Maple and 504 Webb.  *See Owens*, 767 F.3d at 389; *see also Nat'l Advert.*, 947 F.2d at 1167 ("[W]hen enacted the 1983 ordinance interfered in concrete ways with [the plaintiffs'] primary use of specific property[.]"); *Ocean Acres Ltd. P'ship v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 107 (4th Cir. 1983) (plaintiff's "due process claims accrued when plaintiff knew of or had reason to know of" the ordinance banning septic tanks); *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011) ("*ASWAN*") (advocacy organization had reason to know of defendants' purported conspiracy to violate the equal protection rights of homeless individuals when defendants relocated city's homeless accommodation efforts away from city's downtown).[6]  As a result, Andrews as-applied Restriction Causes of Action are time-barred.

### 2.    Andrews Fails to Allege a Continuing Violation as to its Restriction Causes of Action.

Although its claims accrued outside of the limitations period, Andrews asserts in its briefing that the Amended Complaint "set[s] forth continuing and discrete acts into 2022, within the three-year period before the March 2025 filing," that "are new and independent injuries, sufficient to refresh accrual."  Dkt. 23 at 3.  It points to

---

[6] Again, even if the Court were to determine Andrews' injuries accrued from the actual notice dates of December 15, 2020, and October 1, 2021, Andrews' substantive due process and equal protection claims would still be time-barred.

"[e]vents such as the July 26, 2022, violation notice and subsequent refusals to rent." *Id.* The Court is unpersuaded.

"State rules on tolling apply when a state statute of limitations is borrowed in a federal question case." *Epcon I*, 62 F.4th at 888. North Carolina's continuing wrong doctrine and federal common law's continuing violation doctrine are effectively one and the same, even deriving from the same federal common law sources. *Compare Epcon Homestead, LLC v. Town of Chapel Hill*, 294 N.C. App. 653, 905 S.E.2d 83, 90-91 (2024) ("*Epcon II*") (outlining North Carolina's continuing wrong doctrine) *with Nat'l Advert.*, 947 F.2d at 1166-67 (detailing the federal common law's continuing violation doctrine); *see also Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 581 S.E.2d 415, 423 (2003) (observing that "this Court has also recognized the 'continuing wrong' or 'continuing violation' doctrine as an exception to the general rule" and applying the test from *National Advertising*). So, here, whether North Carolina or federal common law controls is a distinction without a difference. The Court primarily references the federal common law as it is the case law cited by the parties. *See* Dkt. 9 at 11-14; Dkt. 23 at 3.

The Restriction Causes of Action trace injury to the restrictions contained in the UDO, rather than individual acts of the ordinance's enforcement, precluding Andrews from pleading a continuing violation as a matter of law. Andrews "must establish that the unconstitutional or illegal act was a fixed and continuing practice" to plead a continuing violation. *Nat'l Advert.*, 947 F.2d at 1166 (quoting *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983)) (citation modified). "A

21

continuing violation is occasioned by continual unlawful acts, *not continual ill effects from an original violation.*" *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) (emphasis added)). Accordingly, "[t]he challenged action must be repeated within the statute of limitations period." *Id.* at 1167; *see also Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 672 (10th Cir. 2016) (continuing violation is a "'series of separate acts that collectively constitute one unlawful act,' as opposed to 'conduct that is a discrete unlawful act'" (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)).

The only case that Andrews cites in support of its position, *Virginia Hospital Association v. Baliles*, 868 F.2d 653 (4th Cir. 1989) ("*VHA*"), does not support a continuing violation as to its Restriction Causes of Action. *See* Dkt. 23 at 3. In *VHA*, the plaintiff brought a challenge under § 1983 seeking a declaration and injunction barring enforcement of Virginia's procedures for reimbursing hospitals, claiming that the procedures violated the Medicaid Act or, alternatively, the due process rights of its members. 868 F.2d at 656. All parties agreed that the statute of limitations was two years, that Virginia's reimbursement plan was enacted in 1982, and that the plaintiff did not file suit until 1986. *Id.* at 663. The Fourth Circuit ultimately held that the plaintiff sufficiently alleged a continuing violation and affirmed the district court's reasoning that "the continued enforcement of an unconstitutional statute cannot be insulated by the statute of limitations." *Id.* (quotation modified).

The broad language in *VHA*, however, does not support Andrews' position because *National Advertising*—decided two years after *VHA*—cabined it. Indeed,

22

*National Advertising* clarified that when the alleged continuing violation is the enforcement of an allegedly unconstitutional law, there is "no continuing violation where any harm to the plaintiff stemmed only from the initial application of a regulatory prohibition," 947 F.2d at 1167—*i.e.*, where "the particular enforcement challenged is a single act," *Johnson v. Jessup*, 381 F. Supp. 3d 619, 636 (M.D.N.C. 2019) (describing the test adopted by *National Advertising*) (internal quotation omitted). To assess that question, the Court must consider: (1) "[t]he particular policies of the statute of limitations in question[;]" and (2) "the nature of the wrongful conduct and harm alleged." *Nat'l Advert.*, 947 F.2d at 1167 (quoting *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971)). Applying the two-part test articulated in *National Advertising*, Andrews fails to allege a continuing violation.

*First*, the policies of the statute of limitations "supports the conclusion that no unfairness results from finding that the continuing wrong exception is inapplicable here." *Nat'l Advert.*, 947 F.2d at 1168. Andrews "was aware of the actions taken by [the City] and of the impact of those actions on" its boarding houses *at the very latest* when the City issued the violation notices. *See Ocean Acres*, 707 F.2d at 107. Andrews then chose to pursue state administrative relief instead of filing in federal court, even though it was not required to do so. *See Knick*, 588 U.S. at 184-85; *Patsy*, 457 U.S. at 516; *see also* Amended Complaint ¶¶ 79-83, 127-34. It could have elected to pursue its writs of certiorari with the Alamance County Superior Court to overturn the Board's unfavorable rulings, but it does not allege that it did. And Andrews then chose to pursue a public records request in state court before pursuing a federal

23

lawsuit.  *See id.* ¶¶ 201-05.  Fundamentally, "a 'continuing wrong' theory should not provide a means of relieving [a] plaintiff from its duty of reasonable diligence in pursuing its claims." *Ocean Acres*, 707 F.2d at 107.  Andrews opted to make use of state law procedures before proceeding to federal court.  That decision was Andrews' choice.  The continuing wrong doctrine does not provide a plaintiff with an escape hatch when state-law remedies do not lead to its desired result.  And the doctrine does not protect a plaintiff from its own failure to file a federal complaint before the sun has already set on its causes of action.

*Second,* "[t]he restriction on use and the economic loss" of which Andrews complains "occurred upon enactment" of the UDO as a single act.  *Nat'l Advert.*, 947 F.2d at 1167.  *National Advertising* and *Epcon I* both rejected application of the continuing violation doctrine to causes of action analogous to those alleged by Andrews here.  Those Fourth Circuit cases clarify that land-use restrictions contained in local zoning ordinances inflict constitutional injury as a single act because, once enacted, the ordinances immediately impose burdens on the use of property.  *See Nat'l Advert.*, 947 F.2d at 1166-68; *Epcon I*, 62 F.4th at 888-89.  The North Carolina Supreme Court, in a companion case to *National Advertising*, similarly recognized that land-use restrictions burden property rights as a single act.  *Cap. Outdoor Advert., Inc. v. City of Raleigh*, 337 N.C. 150, 446 S.E.2d 289, 297 (1994) (federal takings challenge to local zoning ordinance requiring removal of billboard accrued when ordinance went into effect because "[i]t was on that precise date that the expected useful life of the plaintiffs' billboards was foreshortened").

24

Andrews attempts, but fails, to get around the weight of this authority by highlighting acts that it believes "are new and independent injuries, sufficient to refresh accrual" as to 504 Webb and 614 Maple, "such as the July 26, 2022, violation notice and subsequent refusals to rent." Dkt. 23 at 3. But *National Advertising* has already rejected that a violation notice is a unique injury under the continuing violation doctrine for causes of action like Andrews' Restriction Causes of Action. *See* 947 F.2d at 1167 (declining to recognize a "letter from Raleigh, informing [the plaintiff] that its nonconforming signs would have to be removed" as an independent injury, reasoning that it was merely one of "the *effects* of their being deemed nonconforming upon enactment of the ordinance, not a separate violation" (emphasis in original)); *see also Ocean Acres*, 707 F.2d at 106-07 (a continuous deprivation of property rights stemming from injury incurred from initial passage of a law is not a continuing wrong). As in *National Advertising*, the July 2022 violation notice is merely an effect of the land-use restrictions that burdened 504 Webb when the UDO went into effect.

The purported "refusals to rent" at 614 Maple do not refresh accrual, either. *See* Amended Complaint ¶¶ 140-42. Neither of these allegations restart the accrual period as to Andrews' claims, as neither alleges relevant conduct to causes of action challenging restrictions contained within the UDO. *See ASWAN*, 655 F.3d at 348 ("allegation[s] of an entirely new" character do not "establish a continuing violation"); *see also Nat'l Advert.*, 947 F.2d at 1167 (continuing violation requires that "the *same* alleged violation was committed at the time of each act" (emphasis added and internal

25

quotation omitted)). As to the Restriction Causes of Action, at most these allegations are nothing more than "the continuing effect of the original" injury that Andrews incurred when the UDO prohibited 614 Maple from renting out more than five rooms. *See ASWAN*, 655 F.3d at 348-49 (defendants' efforts to relocate certain services for the homeless away from downtown and to new shelter was continued effect of initial injury stemming from opening of that shelter away from the downtown).

The remaining allegations in the Amended Complaint also fail to bring any of Andrews' Restriction Causes of Action within the period of limitations. Andrews alleges that the City arbitrarily enforced the UDO against boarding houses owned by Andrews besides 504 Webb and 614 Maple. *See* Amended Complaint ¶¶ 144-200. It also alleges that the City failed to comply with a public records request filed in state court concerning 504 Webb and 614 Maple. *See id.* ¶¶ 201-05. These allegations cannot re-accrue Andrews' claims because they either do not constitute new injuries to 504 Webb and 614 Maple or allege conduct entirely irrelevant to Andrews' Restriction Causes of Action, which only address the burdens the UDO allegedly placed on Andrews' constitutional rights. *See ASWAN*, 655 F.3d at 348. The remaining allegation regarding the condemnation of 504 Webb is, again, only an *effect* of Andrews' continued non-compliance with the UDO's land-use restrictions. *See* Amended Complaint ¶¶ 91-92 (City's stated reasons for condemning 504 Webb included illegally operating it as a boarding house).

Andrews' as-applied Restriction Causes of Action accrued when the City passed the UDO on November 1, 2019. Andrews has failed to allege a continuing

26

violation that could pull its otherwise time-barred causes of action into the period of limitations. Accordingly, those causes of action must be dismissed as time-barred, as they expired years before Andrews filed suit with this Court on March 25, 2025.

### B. Andrews' Enforcement Causes of Action Are Time-Barred to the Extent They Concern Conduct Before March 25, 2022.

Andrews' allegations of disparate treatment after the limitations period began on March 25, 2022, would survive a motion to dismiss and therefore are not futile. *See Tommy Davis*, 807 F.3d at 66-67 (North Carolina's three-year personal injury statute of limitations applies to all § 1983 claims). All other instances of discrimination alleged in Andrews' Enforcement Causes of Action (as set out in Counts 1 and 4) fail because each instance of discrimination is a single act and Andrews fails to allege a continuing wrong.

The Amended Complaint appears to allege a "class-of-one" discriminatory enforcement cause of action, claiming that Andrews' properties were treated differently than other similarly situated boarding houses. *See* Amended Complaint ¶¶ 214, 243; Dkt. 23 at 5 (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). The alleged instances of disparate treatment include:[7] (1) the

---

[7] The Court acknowledges that Andrews alleges that, within the limitations period, two would-be renters of rooms in 614 Maple decided to look elsewhere allegedly at the behest of the City, Amended Complaint ¶¶ 140-42, but Andrews makes no allegations connecting these events to the City's alleged discriminatory enforcement of the UDO. And, in any event, according to the Amended Complaint, Andrews appears to have added these allegations to allege only additional factual support regarding the City's discriminatory animus against it. *See id.* ¶¶ 142-43. While this information is necessary to adequately plead Andrews' class-of-one causes of action, *see Olech*, 528 U.S. at 565-66 (Breyer, J., concurring in the result), the fact remains that this conduct is at best tangentially related to the City's enforcement of the UDO.

27

City's issuance of violation notices to various boarding houses owned by Andrews between December 2020 and August 2022 for infractions under the UDO, *see* Amended Complaint ¶¶ 68-69, 121-22, 173, 178-81; (2) the Burlington Police and Fire Departments' supposed refusal to respond to several emergencies at Andrews' properties between 2020 and 2022, *see id.* ¶¶ 186-200; and (3) the City's condemnation of 504 Webb on July 6, 2022, for violating the UDO, *see id.* ¶¶ 92-93.[8]

In equal protection cases alleging discriminatory enforcement, each instance of discriminatory enforcement "constitute[s] a discrete act triggering a separate limitations period." *See Fauconier v. Clarke*, 966 F.3d 265, 273 (4th Cir. 2020) (each refusal to hire triggered a separate period of limitations in equal protection challenge for hiring discrimination); *USA Ent. Grp., Inc. v. Tony*, 847 F. App'x 642, 646-47 (11th Cir. 2021) (plaintiff's class-of-one equal protection challenge concerning city's "excessive policing" of plaintiff's business was partially time-barred because each instance of enforcement triggered the statute of limitations separately). As the Supreme Court has observed in the context of Title VII of the Civil Rights Act, "discrete discriminatory acts are not actionable if time-barred, even when they are related to" timely-filed acts because "[e]ach discrete discriminatory act starts a new clock" as to that act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Applying these principles here, Andrews' Enforcement Causes of Action are mostly time-barred. Only allegations of alleged discriminatory enforcement or

---

[8] Defendants appear to concede this point because they do not oppose Andrews' amendment to the extent that it alleges that the July 6, 2022, condemnation of 504 Webb violated Andrews' rights under federal and state law. *See* Dkt. 21 at 2.

28

disparate treatment that occurred after March 25, 2022, survive Defendants' statute of limitations defense. These actions include: (1) issuing violation notices to various Andrews' properties in July 2022, August 2022, and February 2025, *see* Amended Complaint ¶¶ 97, 178, 180-81, 184; (2) condemning 504 Webb on July 6, 2022, for violating the UDO, *see id.* ¶¶ 92-93; and (3) refusing to respond to a 911 call at one of Andrews' boarding houses sometime in 2022, *see id.* ¶¶ 188-90.[9] All of the City's other discrete acts of alleged disparate treatment occurred prior to March 25, 2022. They are accordingly time-barred.

The continuing violation doctrine does not save time-barred instances of alleged discrimination, either. The mere fact that the City's alleged discrimination was repeated or ongoing does not necessarily save the Enforcement Causes of Action in their entirety. *See Fauconier*, 966 F.3d at 274 ("Fauconier's § 1983 equal protection claim was timely with respect to any refusal by the VDOC to hire him within the two-year period prior to the commencement of this action."); *Al-Amin v. Shear*, 325 F. App'x 190, 193-94 (4th Cir. 2009) (inmate's equal protection claims were not time-barred because he "alleged an ongoing violation in [his] complaint," namely the repeated enforcement of the allegedly discriminatory policy, even if "it may be that certain aspects of the claim are barred by the statute of limitations"). To constitute a single continuing violation, each instance of Defendants' discrimination must be of

---

[9] Viewing the Amended Complaint in the light most favorable to Andrews, the Court cannot conclude that the 911 call occurred before March 25, 2022, so it may not be dismissed at this stage as time-barred. *See Epcon I*, 62 F.4th at 885 (affirmative defense must clearly appear on the face of the complaint to be a ground for dismissing the complaint).

the same character. *See Nat'l Advert.*, 947 F.2d at 1167 (if "the same alleged violation was committed at the time of each act," then continuing violation doctrine may apply (internal quotation omitted)). The instances where the North Carolina Supreme Court has applied the doctrine confirm this principle. *See, e.g.*, *Quality Built Homes Inc. v. Town of Carthage*, 371 N.C. 60, 813 S.E.2d 218, 226-29 (2018) (repeated instances of unlawful fee collection under same ordinance); *Williams*, 581 S.E.2d at 420-24 (repeated unlawful delegation of enforcement authority); *Faulkenbury v. Tchrs.' & State Emps.' Ret. Sys. of N.C.*, 345 N.C. 683, 483 S.E.2d 422, 429-30 (1997) (repeated instances of unlawfully reducing plaintiffs' disability retirement payments); *Lightner v. City of Raleigh*, 206 N.C. 496, 174 S.E. 272, 276-78 (1934) (repeated discharge of sewage onto plaintiff's property); *Sample v. Roper Lumber Co.*, 150 N.C. 161, 63 S.E. 731, 732 (1909) (repeated physical trespass). Here, Andrews has simply cobbled together a bunch of unrelated instances of alleged disparate treatment by the City and called it a continuing violation. That it cannot do. *See Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 451 S.E.2d 650, 654-55 (1995) (unrelated acts of workplace discrimination and harassment did not amount to continuing wrong).

In any event, "a 'continuing wrong' theory should not provide a means of relieving [a] plaintiff from its duty of reasonable diligence in pursuing its claims." *Ocean Acres*, 707 F.2d at 107. It would be unfair to provide Andrews with an end-run around the statute of limitations by applying the continuing violation doctrine to the facts of the Amended Complaint. *See Miller v. King George County*, 277 F. App'x

30

297, 299-300 (4th Cir. 2008) (unfairness would result from permitting alleged "continuing harassment and unconstitutional actions by" municipality to constitute continuing violation saving challenge to zoning ordinance six years after first notice of violation); *USA Ent.*, 847 F. App'x at 647 (plaintiff could not claim continuing violation because it could have timely filed, but it instead opted to spend years sending the city six cease-and-desist letters).

While Andrews may use the otherwise time-barred instances of discrimination to support its timely claims, each instance of discrimination is discrete and independently actionable, *see Morgan*, 536 U.S. at 113, so it may not recover for acts of discrimination pre-dating March 25, 2022. Thus, the Enforcement Cause of Action are dismissed except for allegations after March 25, 2022.[10]

## C. Andrews' Procedure Causes of Action are Time-Barred.

Andrews' Procedure Causes of Action (described in Counts 3 and 6) are also time-barred. Whether procedural due process causes of action challenging alleged infirmities with state proceedings are timely "depends on when [the relevant

---

[10] The Court notes that the Amended Complaint's allegations of class-of-one discrimination are barebones at best and largely conclusory. *See, e.g.*, Amended Complaint ¶¶ 214, 243. Andrews fails to allege in non-conclusory fashion that other similarly situated boarding houses were treated differently by the City. *See SAS Assocs. 1, LLC v. City Council for City of Chesapeake*, 91 F.4th 715, 722 (4th Cir. 2024) (to adequately plead a class-of-one cause of action complaining about local zoning decisions, a plaintiff must "show an extremely high degree of similarity between themselves and the persons to whom they compare themselves" (internal quotation omitted)). But Defendants only oppose Andrews' Enforcement Causes of Action on the ground that they are time-barred, *see* Dkt. 21 at 2, so the Court is forced to conclude that Andrews' amendment, at least as to the timely portions of the Enforcement Causes of Action, is not futile.

31

decisionmaker] reached a final decision" in the proceedings. *See Reid v. James Madison Univ.*, 90 F.4th 311, 321 (4th Cir. 2024). A decision is final when the decisionmaker has "made clear its official position that concluded those proceedings." *Id.* at 321-22. That is so because "a plaintiff's injury accrues at the time that process was denied," *Bozzo v. Nanasy*, 159 F.4th 1111, 1117 (6th Cir. 2025) (quotation omitted), and subsequent proceedings (such as an appeal) can cure alleged due-process errors, "thereby rendering a federal § 1983 suit unnecessary," *Reed v. Goertz*, 598 U.S. 230, 237 (2023).

The Procedure Causes of Action allege that the Defendants violated Andrews' procedural due process rights during its appeals of the violation notices before the Board. *See* Amended Complaint ¶¶ 230-35, 260-65. If Andrews alleged that it further appealed the Board's decision and received a final decision on those further appeals within the statute of limitations period, those allegations would likely be sufficient to deny a motion to dismiss Andrews' as-applied procedural due process causes of action. *See Reid*, 90 F.4th at 323 (university's decision was not final until appeal to provost was resolved because university's policies revealed the dean's decision was not final if appealed, and it was undisputed that professor appealed); *Epcon I*, 62 F.4th at 885 (affirmative defense must arise on the face of the complaint). But the Amended Complaint *does not* allege that Andrews pursued appeals. It merely alleges that it filed writs of certiorari with the relevant state court. That is not the same.

The Court looks to North Carolina law to determine when Andrews' Procedure Causes of Action accrued. *Cf. Reed*, 598 U.S. at 236 (looking to state statutes

32

governing appellate review to determine when state issued final decision on denial of DNA testing). North Carolina law provided Andrews with a right to appeal the Board's decisions "by filing a petition for writ of certiorari with the [relevant] superior court." N.C. Gen. Stat. § 160D-1402(b). A superior court is even empowered to review *de novo* a local board of adjustment's hearings to ensure that they were not "[i]n violation of constitutional provisions, including those protecting *procedural due process rights.*" *Id.* § 160D-1402(j)(1) (emphasis added). Thus, review of the Board's determinations was certainly possible, and the relevant superior court could have even corrected any alleged procedural due process infirmities.

The more salient question, however, is whether Andrews alleges that it invoked those appellate proceedings. It did not. To invoke the superior court's review, Andrews was required to "comply with the statutes and rules of Court" to "perfect[] [its] appeal." *Philadelphus Presbyterian Found., Inc. v. Robeson Cnty. Bd. of Adjustment*, 2014 WL 47325, at *4 (N.C. Ct. App. Jan. 7, 2014). Such procedural requirements include, *inter alia*: (1) filing the writ "30 days after the decision is effective or after a written copy" is properly served on the property owner, *see* N.C. Gen. Stat. §§ 160D-1405(d), 160D-406(j); (2) filing a petition that clearly pleads standing and the grounds for the appeal, *see id.* § 160-1402(b); (3) joining all necessary parties to the appeal, *see id.* § 160-1402(d); and (4) serving the petition and writ of certiorari on all respondents, *see id.* § 160-1402(e). The North Carolina courts have characterized these procedural requirements as jurisdictional in character. *See, e.g.*, *McCrann v. Village of Pinehurst*, 216 N.C. App. 291, 716 S.E.2d 667, 670 (2011)

33

("[T]he requirement of timely filing and service of notice of appeal is jurisdictional, and unless the requirements are met, the appeal must be dismissed." (citation modified and quotation omitted)); *Hunter Haven Farms, LLC v. City of Greenville Bd. of Adjustment*, 293 N.C. App. 254, 900 S.E.2d 332, 334 (2024) ("A petitioner's failure to name a necessary party in its petition for writ of certiorari is fatal unless the proper respondent participates in the proceeding."). Failure to strictly comply with these requirements warrants summary dismissal of the writ for lack of jurisdiction. *See N.C. Central Univ. v. Taylor*, 122 N.C. App. 609, 471 S.E.2d 115, 118 (1996) ("Failure to meet the pleading requirements for this extraordinary writ deprives the superior court of subject matter jurisdiction[.]"); *McCrann*, 716 S.E.2d at 670 (rejecting suggestion that mere substantial compliance with procedures for filing a writ of certiorari is sufficient).

The allegations in the Amended Complaint do not suffice to demonstrate that Andrews properly appealed the Board's determinations. It only alleges that it filed petitions for writ of certiorari with the Alamance County Superior Court on July 18, 2022 (for 504 Webb) and an unspecified date (for 614 Maple). Amended Complaint ¶¶ 95, 139. Those writs were apparently issued by the superior court on July 26, 2022, and April 13, 2022, respectively. *Id.* ¶¶ 96, 139. The Amended Complaint contains *no* allegations to the effect that Andrews met *any* of the necessary procedural requirements such as timely filing, serving the proper parties, or joining all necessary parties. But even more fundamentally, it does not allege that Andrews litigated *anything* before that court, substantive or procedural, which could have rendered the

34

Board's decisions something less than final. The fact that Andrews' writs were issued is alone insufficient to perfect the appeal because "[t]he clerk shall issue the writ *without notice to the ... respondents* if the petition has been properly filed." N.C. Gen. Stat. § 160D-1402(e) (emphasis added). While the Court must accept as true the allegations in the Amended Complaint, *see Vitol*, 708 F.3d at 539, it does not need to draw the plainly unwarranted inference, *see Epcon I*, 62 F.4th at 885, that Andrews appealed and litigated the Board's determinations before the Alamance County Superior Court when it does not make any allegations to that effect. That is especially true when North Carolina law makes clear that mere *filing and issuance* of a writ is not sufficient to appeal the Board's adverse determinations. *See In re Battle*, 166 N.C. App. 240, 601 S.E.2d 253, 254 (2004) ("A party's right to appeal an administrative agency's decision is limited to those situations where (1) a statute grants the right of appeal and (2) the party's appeal conforms to the statutes granting the right of appeal and regulating the procedures." (citation modified and quotation omitted)).

As the Amended Complaint does not allege that Andrews appealed the Board's adverse decisions, the Board "made clear its official position that concluded [Andrews'] proceedings" when it issued its decisions against 504 Webb and 614 Maple on May 11, 2021, and February 22, 2022, respectively. *See Reid*, 90 F.4th at 322-23 (due process violation accrued when provost denied professor's appeal in "'final,' non-appealable decision"); *Durham County v. Addison*, 262 N.C. 280, 136 S.E.2d 600, 603 (1964) ("The decisions of the Board of Adjustment are final, subject to the rights of courts on certiorari …."). The Procedure Causes of Action contained in Counts 3 and

6 are thus time-barred because they expired before Andrews filed suit on March 25, 2025.

**II.     Andrews' State Constitutional Claims are Time-Barred Except for One Violation Notice Issued in February 2025.[11]**

Andrews also brings state-law constitutional takings and equal-protection causes of action, which again divide into two claims (or sets of facts) challenging allegedly unconstitutional restrictions in the UDO (the "State-Law Restriction Causes of Action") and the City's disparate enforcement of them (the "State-Law Enforcement Causes of Action"), respectively.[12]   Their distinctions largely do not matter for purposes of Andrews' state-law claims, however, because the relevant one-year statute of limitations bars nearly all of them.  Although its causes of action may have accrued on different dates, Andrews still failed to file suit until long after the one-year limitations period expired as to all but one instance of allegedly discriminatory enforcement.

Defendants argue that North Carolina's one-year statute of limitations for "[a]ctions contesting the validity of any zoning or unified development ordinance" bar

---

[11] Unlike Andrews' facial federal constitutional challenges, which Defendants do not move to dismiss, *see* Dkt. 9 at 9; Dkt. 21 at 2, Andrews' state-law constitutional challenges are time-barred, whether it pursues an as-applied or facial challenge.  The relevant statute of limitations applies to constitutional challenges, whether facial or as-applied.  *See* N.C. Gen. Stat. §§ 160D-1403.1(a), (c).

[12] Counts 1 and 4 allege *both* that: (1) the UDO arbitrarily draws lines between boarding houses and other similarly situated land-uses; and (2) the City enforced the UDO's restrictions on boarding houses against Andrews in a manner that singled it out among other similarly situated boarding houses.  Counts 7 and 9 assert that the UDO effectuated a taking of Andrews' property rights under the North Carolina Constitution.

Andrews' state-law causes of action. *See* N.C. Gen. Stat. § 1-54(10); *see also id.* § 160D-1403.1(c) ("Any action brought pursuant to this section shall be commenced within one year …."). The Court agrees. All of Andrews' state-law causes of action challenge "the enforceability, validity, or effect of a local land development regulation," *id.* § 160D-1403.1(a), so Andrews' action must have been "commenced within one year" of when Andrews' injuries' accrued, *id.* §§ 1-54(10), 160D-1403.1(c).

The plain text of the statute covers Andrews' state-law causes of action. Section 160D-1403.1 provides a private right of action "in superior court or federal court to challenge the enforceability, validity, or effect of a local land development regulation," including on the ground that "[t]he ordinance, either on its face or as applied, is unconstitutional." N.C. Gen. Stat. § 160D-1403.1(a)(1); *see also Valentine v. Town of Chapel Hill*, No. 1:22-cv-102, 2024 WL 1349320, *6-7 (M.D.N.C. Mar. 29, 2024) (recognizing that § 160D-1403.1(a) supplies a private right of action). Elsewhere in the statute, it imposes a one-year statute of limitations. *See* N.C. Gen. Stat. § 160D-1403.1(c); *see also id.* §§ 1-54(10), 160D-1405(b).

Andrews' state-law claims challenge allegedly unconstitutional restrictions in the UDO and the City's disparate enforcement of them in violation of its equal protection rights. Andrews' claims thus fall within the statute because it seeks to "challenge the enforceability" or "validity" of the UDO on the grounds that it is "unconstitutional" "on its face or as applied," *id.* § 160D-1403.1(a)(1). That statute's limitations period accordingly applies, as well. *See* N.C. Gen. Stat. § 160D-1403.1(c); *see also id.* §§ 1-54(10), 160D-1405(b). The Court's conclusion is bolstered by the fact

37

that Andrews invokes Section 160D-1403.1's private right of action to pursue its state-law causes of action challenging the constitutionality of the burdens imposed by the UDO and their enforcement against Andrews. *See* Amended Complaint ¶ 5; *see also Epcon II*, 905 S.E.2d at 92 ("Where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." (internal quotation omitted)).[13]

The Court's interpretation is supported by the North Carolina Court of Appeals in *Epcon II*. That court found that Section 160D-1403.1's one-year statute of limitations applied to state-law statutory claims seeking refund of allegedly unlawful fee conditions contained in a local zoning ordinance. *See Epcon II*, 905 S.E.2d at 92-93.[14] It concluded that the plaintiff's fee-repayment causes of action fell within the

---

[13] Contrary to Defendants' assertions, the state-law causes of action are not barred by adequate state law remedies. It is true that *Corum* "[d]irect claims … arising under the North Carolina Constitution are permitted only 'in the absence of an adequate state remedy,' and where an adequate state remedy exists, those direct constitutional claims must be dismissed." *Askew v. City of Kinston*, 295 N.C. App. 295, 906 S.E.2d 500, 501-502 (2024) (quoting *Corum v. Univ. of N.C.*, 330 N.C. 761, 413 S.E.2d 276, 289 (1992)). But Andrews invokes an express statutory right of action to pursue its state-law causes of action, obviating the need for *Corum*, *see* Amended Complaint ¶¶ 5-6; *see also* N.C. Gen. Stat. § 160D-1403.1(a)(1) (granting plaintiffs a cause of action to challenge the constitutionality of local zoning ordinances). The statutory right of action serves as an alternative to the state administrative and judicial remedies afforded by the statutory scheme. *See* N.C. Gen. Stat. § 160D-1403.1(a). *Askew* is inapposite because the plaintiffs there were required to proceed under *Corum* because Section 160D-1403.1(a) had yet to be enacted by the North Carolina General Assembly when they filed suit.

[14] *Epcon II* concerned the same statute of limitations before it had been reorganized into Chapter 160D of the North Carolina General Statutes by the North Carolina General Assembly. *See* 905 S.E.2d at 89 n.3.

one-year statute of limitations because "regardless of how" the plaintiff "label[ed] its causes of action," the plaintiff clearly "challeng[ed] the validity" of the development-fee ordinance. *Id.* at 93. Although the court did not determine whether the statute applied to the plaintiff's claims seeking declarations that the fee conditions were unconstitutional (reasoning those claims were barred under even a longer three-year statute of limitations), *see id.* at 86, 92; *see also* N.C. Gen. Stat. § 1-52(2), this Court applies the rationale in *Epcon II* to Andrews' state-law causes of action because they all challenge the constitutionality and enforceability of the UDO's restrictions on Andrews' boarding houses.

Like their analogous federal claims, Andrews' State-Law Restriction Causes of Action accrued on November 1, 2019, so they are time-barred. "The accrual date is the date when the injured party can sue" after "sustain[ing] an injury to a legally protected interest." *Epcon II*, 905 S.E.2d at 87 (internal quotations omitted). The North Carolina Supreme Court has already concluded that a federal-law regulatory taking cause of action targeting land-use restrictions in local zoning ordinances accrues when the challenged ordinance is enacted. *Cap. Outdoor*, 446 S.E.2d at 297-98. And *Epcon II* found that that state-law declaratory causes of action seeking to declare certain land-use restrictions unconstitutional under the North Carolina constitution accrued when the property rights at issue became burdened by the challenge land-use restrictions. 905 S.E.2d at 88. Guided by these decisions, all of Andrews' State-Law Restriction Causes of Action accrued when 504 Webb and 614 Maple became subject to the restrictions of UDO, as that is the point when Andrews'

39

rights may (or may not) have been infringed. *See id.* at 656-661 (explaining that the accrual analysis is dictated by the cause of action or legal theory).

Andrews' State-Law Enforcement Causes of Action accrued with each instance of allegedly discriminatory enforcement, and all but one violation notice issued in February 2025 are time-barred. Class-of-one discrimination is a viable cause of action under the North Carolina Constitution. *See Mole' v. City of Durham*, 279 N.C. App. 583, 886 S.E.2d 773, 783-84 (2021). But that cause of action accrues when a plaintiff is allegedly "treated different from others similarly situated." *See id.* at 784 (citing *Olech*, 528 U.S. at 564). Said in another way, each instance of differently-situated treatment is an independent act of discrimination that begins a new limitations clock. So, like their analogous federal claims, Andrews' State-Law Enforcement Causes of Action accrued at each point of alleged discrimination. The last discriminatory act that Andrews alleges is a violation notice issued to two properties owned by Andrews Properties of the Carolinas, LLC in February 2025. *See* Amended Complaint ¶ 184. That instance of discrimination is timely. But all other acts of disparate treatment that Andrews alleges, which all occurred in or before 2022, cannot support its State-Law Enforcement Causes of Action because they are subject to the one-year bar in Section 160D-1403.1. Thus, all but one of the acts of discrimination against Andrews are time-barred because they occurred before March 25, 2024.[15]

---

[15] Andrews at least arguably raises the continuing wrong doctrine to save its time-barred claims. *See* Dkt. 23 at 3-4. But, as stated above, North Carolina law does not

**CONCLUSION**

For the reasons stated in this Memorandum Opinion and Order, Andrews'

motion for leave to file its Amended Complaint is GRANTED in part and DENIED in

part. Defendants' motion to dismiss the Complaint is DENIED as moot.

Andrews' motion for leave to file its Amended Complaint is GRANTED to the

extent that it:

1. Removes a count asserting punitive damages claims against Defendants under state and federal law;

2. Expressly alleges facial challenges under the United States Constitution;

3. Adds allegations relevant to Count 9 of the Amended Complaint; and

4. Adds allegations relevant to Count 1 of the Amended Complaint, but only if those allegations concern discriminatory enforcement after March 25, 2022.

Andrews' motion for leave to file the Amended Complaint is DENIED in all

other respects as futile.

Counts 1 through 8 of the proposed Amended Complaint are DISMISSED

WITH PREJUDICE with the following exceptions:

1. Counts 1 and 4, to the extent that they allege that conduct on the part of the City after March 25, 2022, constituted class-of-one discrimination against Andrews under the United States Constitution;

2. Count 1, to the extent that it alleges that conduct on the part of the City after March 25, 2024, constituted class-of-one discrimination against Andrews under the North Carolina Constitution; and

3. Counts 1 through 8, to the extent that they allege facial challenges under the United States Constitution.

---

permit it to point to discrete acts of unrelated discrimination and call those acts a continuing violation. *See Morrison-Tiffin*, 451 S.E.2d at 654-55.

41

Andrews is ORDERED to re-file a corrected Amended Complaint within fourteen (14) days of this Memorandum Opinion and Order in accordance with the following instructions:

1. Counts 1 through 8 are to be re-pleaded as facial challenges under the United States Constitution only. They are to be consolidated as Counts 1 through 4 alleging facial takings, equal protection, substantive due process, and procedural due process violations, respectively.

2. Count 1 and 4's surviving discriminatory enforcement causes of action under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution will be re-pleaded as Count 5.

3. Count 1's surviving discriminatory enforcement cause of action under the Law of the Land Clause of Article 1, Section 19 of the North Carolina Constitution will be re-pleaded as Count 6.

4. Counts 9 and 10 of the Amended Complaint will be re-pleaded as Counts 7 and 8, respectively.

5. Allegations concerning Andrews' public records request will be STRICKEN.

It is so ORDERED.

This the 31st day of March, 2026.

_____
LINDSEY A. FREEMAN
UNITED STATES DISTRICT JUDGE

42